## LABOMBARDE v. LORD BALTIMORE PRESS, Inc.

(Circuit Court, D. Maryland. June 29, 1911.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—MACHINE FOR MAKING PAPER BOXES.

The Labombarde patent, No. 960,348, for a machine for making pasteboard boxes, construed, and *held* valid; also infringed as to claims 1, 7, and 8, but not infringed as to claims 9, 10, and 11.

In Equity. Suit by Elie W. Labombarde against the Lord Baltimore Press, Incorporated. On final hearing. Decree for complainant.

William Quinby, for plaintiff.
A. C. Paul and Roger W. Cull, for defendant.

ROSE, District Judge. This is a patent case. The patent in suit is No. 960,348, issued June 7, 1910. It will be called the patent. The plaintiff is the inventor and patentee. He is a citizen of New Hampshire. He will be called the plaintiff. The defendant on the record

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r·Indexes

is the Lord Baltimore Press, Incorporated. It is a Delaware corporation. It has its principal place of business in Baltimore, in this district. The plaintiff says that the Lord Baltimore Press here infringes his patent by using a machine made by the E. G. Staude Company of Minneapolis, Minn. The last-named corporation is not formally a party to the suit. It has, however, put on the record the statement that it is defending the case. It regularly manufactures and sells machines of the kind here alleged to infringe the plaintiff's patent. Both parties agree that it is the real defendant in interest. To save circumlocution, it will accordingly be called the defendant.

The patent is for a machine for making pasteboard boxes. The defendant's machine makes such boxes. The raw material of each machine is the same. Each takes hold of what is technically called a scored blank. A scored blank is a piece of pasteboard cut to the proper size and shape. It is scored or creased on lines at which it is intended the board shall bend to make the box. Each machine turns out the box with its sides properly glued or pasted together. In each when a box comes from the machine it is in a flattened condition. It can easily be opened, and the bottom and top closed by hand at the time the box is filled. It follows that the raw material and the finished product of each machine is identical. Each can make boxes of different sizes. Broadly speaking, the same operations are performed in each machine. These operations follow one another in the same order. Every machine which turns a scored blank into a pasted and flattened box must in some way do certain things. It is most convenient, if not necessary, that these steps shall follow each other in the same order of time. Paste or glue must be put at or near one edge of one of the sides. Each of the two opposite sides of the blank must be turned through an angle of 180 degrees from a position in which it lies horizontally extended from the middle portion of the blank to a position in which it lies horizontally flattened upon that middle portion. The side upon which the glue or paste has been placed must be brought down to its final position before the other side is turned down. This is necessary in order that the unpasted side may come down upon the pasted. After it is brought down upon the pasted side, the downward pressure upon it must be continued for some little while. If this pressure is released before the paste or glue has had time to set or harden, the natural elasticity of the blank will tend to tear the edges apart. Each of the machines has devices for feeding the blanks to the machine, for putting the paste or glue upon the blanks, and also for stacking or piling the blanks after they leave the machine. It is not alleged that the defendant's machine infringes the plaintiff's in any of these respects. The controversy relates to those portions of the machine which do the work of turning the edges up and then down.

The plaintiff's patent is issued upon an application which formally dates from 1906. In point of fact, however, the plaintiff described the invention covered by the patent in an application made May 16, 1903. After such application had been pending in the Patent Office for some years, the office required a division of it. It was admitted at the argument that the application of May 16, 1903, disclosed the same

invention for which the patent in suit was issued. The long delay of seven years in the Patent Office was due, not to any material change in the drawings or description of the invention, but to a prolonged controversy as to the wording of the claims. The plaintiff's original claims were worded very broadly and generally. As a result of the proceedings in the Patent Office those found in the issued patent are much more limited and specific.

The patent as issued contained 11 claims. Of these the second to the sixth, inclusive, are not in issue in this case. The plaintiff alleges that the defendant does infringe the other six, viz., claims 1, 7, 8, 9, 10, and 11. All these claims are claims for combinations. I find nothing in the prior art which so clearly anticipates them as to overcome the presumption in their favor resulting from their grant by the Patent Office. Much of the discussion, both as to the validity of these claims and as to whether they have or have not been infringed, appears to me beside the mark. It is not material that particular elements of any of the combinations described in these six claims are old or that all of them are old. If the plaintiff was the first one to put them together to produce a useful result, and his putting them together involved invention, no one else has the right to put the old things together in plaintiff's way to do plaintiff's work. If he can do such work without using some one of the elements which go to make up plaintiff's combination, plaintiff cannot complain.

It appears from the testimony that plaintiff's machines, made in accordance with the description contained in plaintiff's patent, were in commercial use as early as the spring of 1904. The defendant says that machines made by Mr. Staude, who is the inventor of its machine, were in successful operation some years earlier. It is admitted that defendant afterwards altered, and as it seems to me materially altered, the construction of these machines. If the earlier types of machine had operated successfully, it would have been easy for defendant to have put on the stand some of the people who had operated such machine. It did not do so. Its present type of machine, it is admitted, was not made until after plaintiff's machines were on the market. It is the present type which is alleged to infringe. There is no evidence in the record that any of the machines described in the patents issued to other persons were commercial successes, and indeed no evidence that they were ever used at all, although it is not impossible that they were. It is certain, however, that plaintiff's machine in all material respects substantially as it was described in 1903 and put in commercial operation in 1904 is now in extensive use. The plaintiff's machine and the defendant's alike are adapted to run at high speed. Each can perhaps turn out 50,000 small sized boxes an hour, or more than 800 a minute.

The first claim of the patent in suit is for a combination of seven elements. It will be convenient in quoting them to number these elements separately.

The claim reads as follows:

"In a machine of the character described, the combination (1) with a lower carrier comprising a pair of lower belts having upper horizontal stretches to engage a blank and (2) means for actuating said belts, (3) of an

upper carrier comprising a pair of upper pressers extending partway of the length of the horizontal stretches of the lower belts and directly above the upper stretches of the lower belts, (4) flap-elevating inclines arranged adjacent the outside edges of said belts, (5) folding-belts beyond the upper pressers arranged to overlap the said lower carrier to fold down the flaps of the blanks elevated by said inclines, (6) and shoes for pressing the blanks against the lower belts, said shoes extending from the upper pressers to the folding-belts, (7) said pressers, belts, and shoes being laterally adjustable to accommodate blanks of greatly varying widths."

It is admitted that the first, second, fourth, and seventh elements of this combination are found in defendant's machine. The defendant says that its device does not include the third, the fifth, or the sixth. The third element is an upper carrier comprising a pair of upper pressers extending part way of the length of the lower belts, and directly above them. The defendant says in its machine there are no upper pressers. The plaintiff never has more than two lower belts. Over each of these and brought by pressure in readily yielding contact with it, is an upper belt. The patent states the purpose of the upper belt to be to hold the blank between the belts to keep it from twisting. Defendant's machine is equipped with three lower belts. It has one upper belt directly over the central lower belt. Over each of the side lower belts is a bar. The distance of this bar from the lower belt is adjustable. In practice defendant says that one end of it touches the belt. The other is an eighth of an inch above the belt. So adjusted, it would seem to serve the purpose of guiding the blank and keeping it from raising or twisting. When defendant's machine is being operated to make large boxes, all three lower belts are used. The center of the blank then passes under the upper belt of the defendant, and is gripped between it and the lower belt immediately under it. Each side of the blank is held between one of the bars and the lower belt immediately under such bar. When defendant's machine is working on smaller boxes, one or the other of the lower side belts and the bar over it is taken off. The blank is fed through the machine in such manner that one side of it is gripped between one of the lower carrying belts and the upper belt. The other side passes between the other lower belt and the bar above it. The defendant apparently has in its machine at all times a pair of upper pressers. It sometimes uses three upper pressers, but, when it uses three, of course, it uses a pair as part of the three. The bars appear to be upper pressers. The upper belt and each of the bars extend partway of the length of the lower belts. The upper belt is directly over the central lower belt. Each bar is directly over one of the lower side belts.

It is said that the proceedings of the Patent Office estopped plaintiff from claiming that either of his upper pressers can be anything but a movable belt. I do not think so. The different wording of the first and seventh claims from the ninth, tenth, and eleventh would indicate that, while the ninth, tenth, and eleventh claims are limited to pressers which are belts, the first and seventh have no such limitation.

There is really very little controversy as to the fifth element. Defendant admits that what are called the pressing belts in its machine do complete the process of folding. They are therefore folding belts.

The sixth element consists of shoes for pressing the blanks against the lower belts, said shoes extending from the upper pressers to the folding belts. In plaintiff's machine these shoes are separate pieces of metal placed on the machine to perform the work above mentioned. In defendant's machine the same purpose is accomplished by extending a portion of the upper frame of the machine in which small rolls are mounted to constitute one shoe and by extending one or the other of the forming bars to make the other. These extensions hold the blanks down until they are gripped by the folding, or, what the defendant calls, the pressing, belts. I am therefore of opinion that the defendant uses a combination which contains every element of that secured to the plaintiff by his first claim. At the argument it was admitted by both sides that there was no substantial difference between the first and seventh claims, and, if the first claim is valid and infringed, the seventh claim is also valid and infringed.

The eighth claim is as follows, a number being given to each element of the combination claimed therein:

"In a machine of the character described the combination of (1) a lower carrier, (2) flap-folding belts, (3) a horizontal pulley for each of said belts lying across said lower carrier, (4) an adjustable pulley for the other end of each belt, (5) an intermediate guide for the acting stretch of each belt, said intermediate guides being located close to the lower carrier to hold the portions of the belts which are between them and the horizontal pulleys substantially parallel with said carrier, (6) and the adjustable pulleys being variable to different positions to change the angles of those portions of the belts which are between them and the said intermediate guides relatively to said lower carrier."

It is not disputed that defendant's machine contains the first element, nor is it disputed that, if it has the second element, it has the third, for there is a horizontal pulley for each of the belts in defendant's machine which plaintiff says are flap-folding belts, but which defendant claims are pressing belts.

In the discussion of the same element in the first claim it was held that defendant's belts were folding belts. It is not questioned that there is an adjustable pulley for the other end of each of defendant's belts, but it is said it is not adjustable in the sense in which the plaintiff uses the word adjustable. It is true that plaintiff's adjustment can be made in various ways. The defendant's apparently only vertically. The pulley remains an adjustable pulley. Its adjustment will adapt its machine to deal with blanks or boxes of different thicknesses, and which reach the belts with the sides at varying angles to each other. If it has the other elements of plaintiff's claim, it has an intermediate guide.

It may very well be that plaintiff did not have before his mind when he worded his description or his claim the arrangement of belts which defendant has devised, but those belts operate in substantially the same way to produce the same result, and the eighth claim of the plaintiff's patent may be read on defendant's construction. I therefore find the eighth claim of the plaintiff's patent infringed.

The plaintiff says that the defendant infringes his ninth, tenth, and eleventh claims. Two upper belts which move in the same direction

and at the same rate of speed as the lower carrier belts are elements in each of these claims. It is admitted that the defendant has only one upper carrier belt. This moves in unison in the same direction, and with the same rate of speed as the lower carrier belts. Plaintiff says defendant has the equivalent of another carrier belt in the fixed bar in its machine. In passing on the first and seventh claims, it has been held that this bar is introduced for the same purpose and accomplishes the same function as one of the plaintiff's movable upper belts. It remains true that the bar is not a moving belt. Plaintiff has so phrased his ninth, tenth, and eleventh claims that no one of them is infringed by any machine which does not contain two upper belts which move in the same direction and at the same rate of speed as the lower carrier belts. It therefore follows that the ninth, tenth, and eleventh claims of the plaintiff's patent are not infringed by the defendant.

I find that the first, seventh, eight, ninth, tenth, and eleventh claims of the plaintiff's patent in suit are valid, that the first, seventh, and eighth are infringed by the defendant, and that the ninth, tenth, and eleventh are not infringed. The usual decree may be entered for an injunction and accounting as to the claims held valid and infringed