LORD BALTIMORE PRESS, Inc., v. LABOMBARDE.

(Circuit Court of Appeals, Fourth Circuit. July 10, 1912.)

No. 1,078.

1. PATENTS (§ 324*)—ASSIGNMENTS OF ERROR—PATENT CAUSES.

While the rules of the Circuit Court of Appeals requiring specific assignments of error will be enforced, a distinction must be recognized between ordinary causes and suits for infringement of patents where the error complained of is in sustaining or denying the validity of the patent or finding infringement or noninfringement, where in either case the entire record bearing on the question presented must necessarily be examined and a more general assignment is permissible.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 600–606; Dec. Dig. § 324.*]

2. PATENTS (§ 22*)—INVENTION—SUBSTITUTION OF EQUIVALENTS IN PRIOR COMBINATION.

The substitution of a well-known mechanical equivalent for one of the elements in a prior combination to accomplish the same result does not constitute invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 24; Dec. Dig. § 22.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—MACHINE FOR MAKING PASTEBOARD BOXES.

The Labombarde patent, No. 960,348, for a machine for making pasteboard boxes, is void for lack of patentable novelty and invention, in view of the prior art. Also, *held* not infringed if conceded validity.

*Appeal from the Circuit Court of the United States for the District of Maryland, at Baltimore.

Suit in equity by Elie W. Labombarde against Lord Baltimore Press, Incorporated. Decree for complainant, and defendant appeals. Reversed.

For opinion below, see 190 Fed. 184.

A. C. Paul, for appellant.
William Quinby, for appellee.

Before GOFF, Circuit Judge, and BOYD and DAYTON, District Judges.

DAYTON, District Judge. This suit in equity involves the validity of appellee's patent No. 960,348 and its alleged infringement by appellant. The court below, for reasons set forth in a written opinion (190 Fed. 184), held the patent valid as to its first, seventh, eighth, ninth, tenth, and eleventh claims, and that the appellant (defendant below) had infringed the first, seventh, and eighth, but not the others. To a decree so holding, this appeal has been taken by the defendant below, who assigns as error: (1) The decreeing that it had infringed the patent; (2) the holding the patent to be valid; (3) the finding that Labombarde was the first inventor of the improvement described in the patent; (4) the denying its motion to take surrebuttal testimony; and (5) the refusal to dismiss the bill.

[1] The appellee has entered a motion in this court to strike out these assignments as not conforming to its rule 11 (193 Fed. vii), and therefore to dismiss the appeal. The argument of this motion was had in connection with that upon the merits. This court has repeatedly called attention to the necessity of strict obedience to its rule touching proper assignments of error. The most recent case treating the subject is that of Burchett v. United States (C. C. A.) 194 Fed. 821. We fully approve all that is there said, and we call attention again to the fact that it is a great injustice to the court for attorneys, preparing such assignments, to pursue either of two courses: First, that of seeking to ascertain in how many different phases, with different verbiage, they may set forth the same proposition of alleged error; and, second, that of seeking to assign such error so generally and indefinitely as to require the court to laboriously study, in very many cases, very large records, to ascertain the extent to which such assignments apply. It may be well said, in this day of complaints of the delays in hearing appeals, that both of these methods tend greatly to such delays, and that, in the first instance, a slight presumption, at least, arises that attorneys hope, by their much reiteration, to create an increased impression in the mind of the court of the magnitude of their com-

plaint and the sanctity of their convictions, while, in the second instance, a like presumption may arise that, not being able to find in the record substantial error themselves, they hope the court will find it for them and, when so found, may hold it covered by some one of their vague and indefinite assignments. Having said this much to clearly indicate our purpose not to modify or relax enforcement of this court's rule, we must however draw a distinction between ordinary and patent cases where the assignments are (a) the upholding or invalidating the patent and (b) the ascertainment of either infringement or noninfringement. In such cases, we cannot say that the assignment does not clearly and fully meet the requirement of the rule, when it alleges that the court below erred in holding the patent valid or invalid or that infringement existed or did not exist. It is true such assignments require full and complete study of the whole record; but, in patent cases, where these defenses are relied on, such complete examinations of the records become a necessity. Every paper, model machine, and all evidence taken concentrates upon these questions and must be deemed pertinent and material to their determination. Therefore in this case we must hold that the two first assignments are properly made, that the third and fifth were unnecessary as being involved in the determination of the first two, and the fourth, for reasons hereinafter set forth, becomes wholly immaterial.

The patent here in controversy is for a machine for making pasteboard boxes. The purpose and operation of this machine and its comparison with the machine used by appellant and claimed to infringe it are fully set forth in the opinion of the court below found in 190 Fed. 184. It is not deemed necessary to restate or add to the very clear and accurate statement there made, but only to refer thereto, and state the conclusions that we have, after careful consideration, reached in the matter. These conclusions are:

First. It is clear that the patent in controversy is not for a pioneer invention to be construed, in its claims, under the law liberally. On the contrary, the machine accomplishes as a final result no more and no less than did the Low machine, patent No. 603,471, and the Cowles machine, patent No. 536,371. Therefore all that can be claimed for it is that it was an improvement upon the prior art whereby an old result was accomplished in a better, more economical, and more efficient manner. It is admitted that several parts of the machine, for example, those for feeding, for putting the paste or glue on the blanks, and for stacking or piling the blanks after they leave the machine, are either old or not infringed by defendant's (appellant's) machine. In fact, as Judge Rose states in his opinion:

"The controversy relates to those portions of the machine which do the work of turning up and then down the edges" of the blanks.

[2, 3] Second. The controversy, narrowed to this single part of the machine, then presents two questions and only two to determine: First, did this "device for turning the edges" involve patentable novelty, or was it simply an adaptation of mechanical equivalents for those used in the Low machine to accomplish the same and no other or

further result? Second, even if presenting patentable novelty, did defendant's machine infringe? If plaintiff's device for turning edges was not new and novel, but simply the adoption of mechanical equivalents for the prior device used for the same purpose, then both plaintiff and defendant's patents are in effect void by reason of the condition of the prior art. It seems to us that a simple comparison of claim 1 of plaintiff's patent (see page 680 of record) with claim 1 of the Low patent (see page 897 of record) discloses the fact that the plaintiff has used only mechanical equivalents to accomplish precisely the same result the Low machine accomplished. The use of belts and curved arms are open to the world, and the use of the belt in this instance so as to secure "an endless carrier-belt whereon the cut and scored blanks are delivered" certainly cannot be considered new and novel, for carrier-belts of this kind are in universal use. Nor is the use of pulleys or other devices whereby such carrier-belts are made to run curved and depressed of less universal use. Nor can we conceive that the placing "curved folder-arms" or guides above such belt so as to produce certain action upon or direction to material carried by the belt involves any patentable novelty in view of the use in the Low machine of "stationary folders located at opposite sides of the carrier for bending the marginal part of the blank" by means of which it was clearly demonstrated to us, by the machines themselves, the same identical result was accomplished. If is substantially accomplished, too, in the Cowles machine by different mechanical equivalents. Cowles recognized how easy it would be to substitute these equivalents, and so he says (page 819 record at bottom of last column) in his patent declaration:

"It is evident, however, that the detail construction and arrangement of my improved machine may be considerably varied without departing from the spirit thereof, and consequently I do not herein specifically limit myself to such exact detail construction and arrangement."

It is true that there is a line of cases holding that a new combination of old elements that "goes a step beyond" (as expressed by Mr. Justice Brewer) and overcomes some difficulty that has made prior machines, almost identical, impractical or uneconomical in general use, is entitled to claim patentable novelty. In such cases evidence of failure of success and commercial use of the older machine and of rapid adoption and large commercial use of the new one is admissible to show that such "step beyond" has been taken. There seems to me a strong presumption that Judge Rose was influenced in his decision by this line of cases, as he says in his opinion that:

"There is no evidence in the record that any of the machines described in the patents issued to other persons were commercial successes, and indeed no evidence that they were ever used at all, although it is not impossible that they were."

In this connection it is to be noted that defendant asked leave to introduce evidence showing the commercial use and success of these prior machines, but was refused permission to do so for the technical reason that he had overlooked doing so during the time fixed for tak-

ing his evidence in chief and his attention was not called to the contention until plaintiff's rebuttal testimony was taken. Defendant complains bitterly of this refusal, and possibly with some justification, if its absence is to be considered as determinative of the case; but we do not think it determinative of the case and therefore immaterial. We do not think "the step beyond" theory or the cases decided in its support applies here at all, for the simple reason that both the Low and Cowles machines practically disclose that there was "no step beyond" to be taken in the art required to overcome an inherent difficulty existing and rendering their use impractical or uneconomical.

Third. If the plaintiff's patent can be sustained at all, it can only be so in the very narrow and restricted use of the mechanical combination which does the work of turning the edges up and then down. This on the theory that it is an original and more effective and practical one than those in former use on machines actually accomplishing the identical result. Restricted to this, it seems very clear that any other device accomplishing this result is open to use, and infringement can only be claimed where the devices or combinations are practically the same. The law does not favor such narrow and restricted claims as it does original pioneer inventions. It seems to us clear in this case that defendant's machine does not infringe these narrow claims to which plaintiff is entitled, if entitled to any at all; therefore, in any event we must reverse, with direction to dismiss the bill.

Reversed.